The court will proceed to the fourth case, the United States v. Kohl. Mr. Ruth. Good morning, my name is Robert Ruth, I represent the defendant appellant, Mr. Justin Kohl. There are two principal issues to decide in this appeal. The first is whether operating with a restricted controlled substance, that offense is sufficiently similar to driving while intoxicated or under the influence to count as criminal history. But before we get to that, the question is, should appellate courts dismiss as harmless errs in the criminal history process. Now I don't concede in this case that the district court would have imposed the same sentence notwithstanding this error. But I think for the sake of argument today, I want to focus on the fact that there are additional harms to the defendant beyond just increasing his sentence in that particular instance, based on criminal history. Now, the first case we have to confront is United States v. Clark. That's an October 24, 2018 case decided by this court, and I have to concede it is dead against us. But it's wrong. It is simply wrong. It deals with this very significant issue in a footnote, and it fails to, well basically what Clark says is that, well most cases focus on the sentence in post. That's what the cases focus on when they're looking at whether there was harm or not harm. Well that's true, but that's because that's how it has come up in the past. But there are no cases that I'm aware of in this circuit or elsewhere that say, well that's the only harm to a defendant, and that's all you should look at. Clark said, well that's what most of the cases look at, and so that's what we're going to look at, and these other harms. The Clark court acknowledges these other harms to the defendant. The fact that he will be in a more restrictive setting in the institution, and the fact that that wrong criminal history score would affect that person upon revocation. He'd get a higher sentence upon revocation, or at least potentially. Acknowledges those errors, but says, well because the cases have all focused on the sentence in post, that doesn't matter. Well that's wrong, one, and two, it's in direct conflict with United States versus LeBlanc. LeBlanc was virtually an identical situation to this case. I think the only difference is LeBlanc came along at a time when the guidelines were mandatory, and now the guidelines are advisory. But in LeBlanc, the question was, does Wisconsin's OWI first count as criminal history? And the district court said yes, which bumped Mr. LeBlanc up one criminal history category, and then said, but I think that over represents, so I'm going to downwardly depart to the next criminal history, to the lower criminal history category. Okay, that's what happened here. But in LeBlanc, the court said, recognized the wrong, or the harm to the defendant, in the context of supervised release. In LeBlanc said, that this is one, it's the defendant's only opportunity to raise this. He doesn't have another chance to raise this. And two, it does increase his criminal history and his potential sentence upon revocation of supervised release. So LeBlanc considered it. The bottom line really is, this court has to decide between Clark and LeBlanc. There's no way that both of the, the footnote in Clark and the footnote in LeBlanc can't coexist because they're opposite each other. Do you have anything to support in this particular case that the criminal history designation of three versus criminal history designation of four would have any impact on the BOP and where they designate your client to go? I know if it's a one and a six, there's clearly a difference in where he might go, but a three and a four, is there anything in the record or anything in BOP's policies that you're aware of that that would put him at a higher security facility as opposed to a medium one? I have never seen a distinction in designation based on three and four. Well, I don't, it goes like this, Judge. You have the difference between three and a four adds points to his total calculation. But there's a lot of other things that go into the total calculation. So it all depends on how the rest of the calculation comes together. So if the person, you know, and more points gets you a higher security. So adding points to the security classification potentially puts the client at a higher security classification. And is it more points for the criminal history, or is it, they calculate those points and then look at criminal history in connection with those points? More points for criminal history. And I cite in my brief, I cite the, it's not really a statute, it's whatever. The regulation. The regulation that they use, yeah. So but you have to look at criminal, so you get points for a lot of different things to decide your security status. And so, and I, you know, I hear numbers like 30, 31, 35. So it, all these things add together. Now you might be on the line where one point makes the difference. I don't know about Mr. Cole, but you know, it's, he's one point to the bad based on this erroneous criminal history score. And, you know, the other thing is, it is a fact, and the guideline actually says, you look, you don't look at the downward departure criminal history score, you look at the criminal history score for purposes of sentencing upon revocation. And it goes, it adds further, if you got a break at your original sentencing, if you, if the court did downwardly depart, it should consider not downwardly departing or upwardly departing now. So it has the potential to sting pretty severely upon revocation. Now Mr. Cole hasn't got revoked, and I hope it doesn't get revoked. But the fact is, these are two examples of definite harm to the defendant. And it's the harm that was recognized in LeBlanc. And LeBlanc didn't have any trouble at all deciding, we're going to review this issue. And that's what we're asking this court to do. But we only have to get there if the district court erred on your first question. You're right. You're right. And so, you know, look, it's, the government actually does a pretty good job in its brief of explaining the history of this. These restricted controlled substance offenses came along because it was hard to prove impairment in the context of drug, drug use during driving. Okay. So they, they completely removed the element of impairment and said, if you have the tiniest speck of a restricted controlled substance in your blood, you lose. You're convicted. Okay. Well, that's a different offense. What the guideline, I mean, this guideline came along before these restricted controlled substances offenses even exist. The guideline says, operating under the influence, operating while intoxicated, and similar offenses. Okay. There's a bunch of them that are all, they're basically the same thing. They're operating under the influence, driving under the influence, driving while impaired. They call them different things, but they all have one essential component, and that's impairment. And ours does not. There's no element of impairment in this one. The government tries to say, well, look, he was impaired. They point to the things in the report. Well, that's not what he was convicted of. So somewhere, someone along the line, the prosecutor or the court decided that, no, there isn't sufficient evidence of his impairment, and that's why he was found guilty of the restricted controlled substance instead of operating while impaired. So the government also points out these prohibited alcohol concentration cases. Okay, that's fair, because I don't think this circuit has ruled on that, but other circuits have said, no, that's similar enough. But in those cases, the restricted, I'm sorry, the prohibited alcohol concentration cases, cases that are based on a specific blood alcohol concentration. Those, each of the cases cited by the government, those cases, they talk about the fact that there's a threshold BAC where we presume impairment. Okay, so impairment is still part of it, not so in the context of the restricted controlled substance case. I'm going to reserve the rest of my time for rebuttal. Thank you. Thank you, Ms. Ruth. Ms. Schlipper. May it please the court, my name is Diane Schlipper, and I represent the United States in this case and did so below. I'm going to actually start where Attorney Ruth left off. Impairment itself, as an element or as a presumption, is sufficient but not necessary to find these offenses similar, which is basically what Application Note 5 is after. Even though impairment is not a requirement, the Wisconsin legislature has created a presumption where driving is unsafe. Drivers who have any restricted controlled substances in their blood are a threat to public safety and are not safe on the road. The presumption in alcohol cases is a .08 blood alcohol content. The presumption in drug cases is zero tolerance. The Wisconsin legislature, in crafting the statute in question, shared the concern of the Sentencing Commission in trying to accomplish the good of eliminating and combating drugged driving in Wisconsin. They chose zero tolerance because there's no measure that can reliably test for impairment given the multitude of drugs and their impacts on people. In Wisconsin, the statute for operating under the influence of the intoxicants, the entire framework, it falls squarely within the offenses outlined or the offenses suggested in Application Note 5. There is a presumption of impairment, which can be sufficient in some of the enumerated statutes, but there are also sections where the presumptions are no impairment, including the offense before the court. As an example, under Section 346.632M, a juvenile who's under the legal drinking age has a zero, a presumption that he cannot drive at all after consuming alcohol. No alcohol is the presumption, and the presumption is the key. It's not the actual word impairment, and Wisconsin does have that presumption. And to find this offense dissimilar to driving while intoxicated or under the influence would basically treat drugged drivers disparately more favorable than drunk drivers, which is inconsistent with the Sentencing Commission. Did you say drugged versus drunk? It would treat drugged drivers more favorably than drunk drivers if this offense were not found to be similar. And even if the district court procedurally erred by including the defendant's conviction, any error was harmless. If there are no questions at this point, I will rely on my brief, and we would ask that the decision of the district court be affirmed. One question. I was just going to say, the error is harmless because he got a much lower sentence. Yes, Your Honor. The district court statements throughout the sentencing hearing show that the judge was not concerned about the defendant's criminal history. He made several statements saying that, and also he sentenced him well below the guidelines for even the advisory range that did not include this offense. Do you agree with Mr. Ruth that if we get to the harmless error issue, that there is a conflict between LeBlanc and Clark? I do not agree with that, Your Honor. I believe that Mr. Ruth mischaracterizes a little bit the reading of LeBlanc to suggest that this court reviewed LeBlanc because the error could impact some sentence upon revocation is not actually what the case says. The case got, on its merits, found that there was no error, and then said in a footnote, and by the way, here's why he brought the case to begin with. I don't agree that, I think he's flipping the rationale. Thank you. Thank you. Mr. Ruth? I guess what I'll say about LeBlanc is just read it. I mean, the footnote very clearly, they didn't have to review that issue. They could have just deep-sixed it and said, we're not going to review it. They did review it because of the harm that would be caused in the event of revocation. A couple of things about what the government said, though. The government said that there's this presumption that drugged driving is not safe, and then the government also talks about, well, we shouldn't treat drugged drivers better than we treat drunk drivers. But the government, in some ways, is arguing against its own brief, because they point out that the reason why, these aren't drugged drivers. They can't prove whether they're drugged drivers. That's why they came up with this, to say, lookit, we're not going to even inquire into whether the person was impaired or drugged. If you have a tiny speck, you lose, that's it. Zero tolerance. So it isn't a question of keeping the road safer. It's a question of making it easier to prosecute people. That's what they did. They made it easier to prosecute people. We used to win some of those, and we used to lose some of those, back when they had to prove impairment. And now, it's just easy. There's no discussion. Okay, they made it super easy in state court, but that doesn't mean that it needs to be made super easy in federal court, because it doesn't match up to impaired driving. Thank you. All right. Thank you, Mr. Ruth. Thank you, Ms. Slipher. The case is taken under advisement.